IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| HECTOR AYALA AND ITZA AYALA, | § | |
| AS REPRESENTATIVES AND NEXT | § | |
| FRIENDS OF I.L., A MINOR, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | C.A. No. 4:16-cv-02503 |
| | § | |
| ESTHER OMOGBEHIN, | § | |
| INDIVIDUALLY AND IN HER | § | |
| OFFICIAL CAPACITY; ROBERT | § | |
| SCOTT ALLEN, INDIVIDUALLY AND | § | |
| IN HIS OFFICIAL CAPACITY; JOHN | § | |
| DOE, INDIVIDUALLY AND | § | |
| IN HIS OFFICIAL CAPACITY; | § | |
| THE HOUSTON INDEPENDENT | § | |
| SCHOOL DISTRICT; AND THE | § | |
| HOUSTON INDEPENDENT SCHOOL | § | |
| DISTRICT BOARD OF EDUCATION, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' FIRST AMENDED MOTION TO DISMISS

TO THE JUDGE OF THE HONORABLE COURT:

Defendants Esther Omogbehin, Individually and in her Official Capacity; Robert Scott Allen, Individually and in his Official Capacity; "John Doe," Individually and in his Official Capacity; the Houston Independent School District; and the Houston Independent School District Board of Education, move to dismiss various of the Plaintiffs' claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and would respectfully show the Court as follows:

## I.   OVERVIEW OF MOTION

Plaintiff I.L. was a tenth grade student at the Houston School for Performing and Visual Arts ("HSPVA") during the 2014-2015 school year. Dr. Robert Scott Allen was the principal of HSPVA, and Plaintiffs allege that Dr. Esther Omogbehin had some sort of supervisory capacity

over Dr. Allen and/or HSPVA for the 2014-2015 school year.  Plaintiffs allege that prior to the school year, Plaintiff I.L. was sexually assaulted by a fellow student at school, during a school orientation activity.

In Plaintiffs' Original Complaint [Doc. 1], they claimed that the actions of the school district after Plaintiff I.L.'s assault violated Title IX, 20 U.S.C. § 1681; Plaintiff I.L.'s rights to equal protection of the laws and privacy under the Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution; and constituted intentional infliction of emotional distress and negligent infliction of emotional distress.   The Defendants filed a collective Motion to Dismiss under FED. R. CIV. P. 12(b)(6) [Doc. 10], and Defendants Omogbehin and Allen filed a Motion to Order Plaintiffs to File a Rule 7(a) Reply to the Individual Defendants' Qualified Immunity Defense (sometimes known as a *Schultea* motion) [Doc. 12.]  On October 11, 2016, the Court granted Plaintiffs permission to replead, and mooted the Defendants' pending motions.  [Doc. 14.]

On October 24, 2016, Plaintiffs filed their First Amended Complaint.  [Doc. 15.]  As will be developed at greater length below, Plaintiffs do not really plead any additional facts to support any of their claims.  The extra length of the First Amended Complaint comes from the fact that they included a lot of additional boilerplate legal allegations in their Causes of Action.  They do admit that they don't really know whether Dr. Omogbehin had anything to do with their situation (First Amended Complaint, ¶ 8), but instead of doing the right thing and dropping her from this lawsuit, they instead kept her and added a "John Doe" Defendant, and allege that maybe it was him (instead of Dr. Omogbehin) that supervised HSPVA during the 2014-2015 school year.  They do clarify that they are only asserting their Title IX claim against the entity defendants, and they technically drop their negligent infliction of emotional distress ("NEID") claim (although they add a straight negligence claim, and it is pretty much the same as their former NEID claim).

## II.    STANDARD OF REVIEW

Dismissal of a lawsuit on the pleadings is proper where there is either (1) lack of a cognizable theory of recovery or (2) the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Phrased a different way, "a claim may not be dismissed unless it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief." *Leffall v. Dallas Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994); *Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). While the Court will accept the plaintiff's factual allegations as true, the factual allegations must exist: "[d]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (quoting 2A *Moore's Federal Practice* § 12.07 [2.-5] at 12-91). In addition, what must be alleged are facts: "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993).

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A court can dismiss a complaint for failure to state a claim if the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007) (quoting *Twombly*). "[A] plaintiff is obligated to provide more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bradley v. Phillips Petroleum Co.*, 527 F.Supp.2d 625, 636 (S.D. Tex. 2007) (quoting *Twombly*). "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the

complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Id.* (quoting *Twombly).* To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide the plaintiff's grounds for entitlement to relief - including *factual* allegations that, when assumed to be true, raise a right to relief above the speculative level. *Cuvillier* v. *Taylor,* 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly).* "Conversely, 'when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum  expenditure of time and money by the parties and the court.'" *Id.* (quoting *Twombly*).

In *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009), the Supreme Court held that Rule 8(a)(2) requires that "the well pleaded facts" must "permit the court to infer more than the mere possibility of misconduct." *Id.* at 1950. A cause of action that is not supported by *any* specific factual allegations does not survive the plausibility standard established in *Iqbal*. To satisfy *Iqbal'*s plausibility standard, a complaint must meet two fundamental criteria. First, it must set forth a claim upon which relief could be granted. Second, it must give the defendant fair notice of what the plaintiffs claim is and the grounds upon which it rests. A complaint cannot fulfill those criteria without alleging sufficient facts to provide concrete notice of the alleged wrongdoing and, putting conclusory allegations to the side, a reasonable basis for inferring that there may be wrongful conduct, *i.e.,* to demonstrate a "reasonably founded hope that the [discovery] process will reveal relevant evidence" sufficient to establish the plaintiffs claim. *Dura Pharms.* v. *Broudo,* 544 U.S. 336, 347 (2005) (quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 741 (1975)). Otherwise, a plaintiff with "a largely groundless claim" would be permitted to "simply take up the time of a number of other people, with the right to do so

representing an *in terrorem* increment of the settlement value." *See Dura Pharms*., 544 U.S. at 347.

While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Iqbal*, 129 S. Ct. at 1949-50. A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. *Id*. at 1940.

## III.    STATEMENT OF ISSUES

A.    Whether claims against the Houston Independent School District Board of Education must be dismissed, because the Board of Education is not a separate legal entity capable of being sued by itself.

B.    Whether Plaintiffs have failed to plead facts that show that any deprivation of Plaintiff I.L.'s equal protection rights or privacy occurred in accordance with official Houston ISD policy or firmly entrenched custom tolerating misconduct, as required for municipal liability under *Monell*.

C.    Whether the tort claims against Defendants Omogbehin and Allen should be dismissed pursuant to the election of remedies provision of the Texas Tort Claims Act.

D.    Whether sovereign immunity bars all state law tort claims against the District.

E.    Whether Plaintiffs' claims for punitive damages against the District under all theories fail as a matter of law.

## IV.   ARGUMENTS AND AUTHORITIES

**A.    Claims against the Houston Independent School District Board of Education must be dismissed, because the Board of Education is not a separate legal entity capable of being sued by itself.**

Plaintiffs sue, as two separate entities, the Houston Independent School District and the "Houston Independent School District Board of Education."  However, the Board of Education of the Houston Independent School District is not a legal entity separate and apart from the Houston Independent School District, and it is therefore not capable of being sued by itself.  In *Rubio v. Turner Unified School Dist. No. 202*, 453 F.Supp.2d 1295, 1300-01 (D. Kan. 2006), the

plaintiffs sued both the Turner Unified School District No. 202 and the Turner Board of Education as two separate entities.   The court granted the school board's motion to dismiss, agreeing with the defendants that school boards are not separate entities from a school district, for purpose of a lawsuit:

> The Turner Board of Education concedes that it is the governing body of the Turner USD No. 202, but argues that as a matter of law, it lacks capacity to sue or be sued under Kansas law. Under Kansas law, a school district can sue and be sued in the name of the unified school district.  A local unified school district in Kansas is considered a municipality for tax and budget purposes.   As the governing body of the unified school district, the board of education has final decision-making authority for the district. Without specifically addressing the issue, Kansas courts have permitted local school boards to sue and be sued as a separate legal entities.  Even so, because the board of education is merely the governing body of the school district and is not a separate legal entity, any judgment against the board necessarily is against the school district. As with claims against individuals acting in their official capacities for a school district, a claim against a sub-unit of a school district is the equivalent of a suit against the school district itself. A suit against both entities is duplicative. The Court therefore sustains the motion to dismiss of the Turner Board of Education.

*Id*. at 1300-01 (internal citations omitted); *see also Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1583 (N.D. Cal. 1993).

Under Texas law, while the board of trustees of a school district may "sue and be sued," they do so "in the name of the district…."  *See* Tex. Educ. Code § 11.151(a).  As one state court has held, "[i]n the context of parties, a school district and its board of trustees, acting in its official capacity only, are one and the same entity."  *New Caney Indep. Sch. Dist. Bd. of Trustees v. Burnham Autocountry, Inc.*, 960 S.W.2d 957, 959 (Tex. App.—Texarkana 1998, no writ). Relying on the *New Caney* decision, this Court has held that "[b]ecause the ISD Board of Trustees lacks the capability to be sued in its own right, and because Jathanna has also sued the ISD, the Board is entitled to be dismissed. Its continued presence in this suit is both redundant and improper."  *Jathanna v. Spring Branch Indep. Sch. Dist.*, 2012 WL 6096675, at *4 (S.D. Tex. Dec. 7, 2012).  Therefore, a lawsuit is proper against either the school district or the board

of trustees acting instead of the school district, but not both, because they are the same entity. For those reasons, so as to avoid confusion going forward, the Defendants respectfully request that the Court dismiss the "Houston Independent School District Board of Education", as a named Defendant separate and apart from the Houston Independent School District, and allow this lawsuit to proceed against the Houston Independent School District.

**B.     Plaintiffs have failed to plead facts that show that any deprivation of Plaintiff I.L.'s equal protection rights or privacy occurred in accordance with official Houston ISD policy or firmly entrenched custom tolerating misconduct, as required for municipal liability under *Monell*.**

Plaintiffs' First Amended Complaint asserts claims against the Defendants for violation of Plaintiff I.L.'s rights to equal protection under the Fourteenth Amendment, and privacy under the Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. (Complaint, ¶ 75.) Plaintiffs' claims against the District are asserted, as they must be, pursuant to 42 U.S.C. § 1983. *Id.* To succeed on such a claim, Plaintiffs must show that the District itself is liable for the violation. *See generally Collins v. City of Harker Heights, Texas,* 112 S. Ct. 1061, 1066 (1992). A school district cannot be held liable under 42 U.S.C. § 1983 for an injury inflicted by its employees or agency based on a theory of vicarious liability or *respondeat superior* liability. *Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 402, 117 S. Ct. 1382, 1388 (1997); *Doe v. Hillsboro Indep. Sch. Dist.,* 113 F.3d 1412, 1416 (5th Cir. 1997) (en banc). The Supreme Court set forth its standard on municipal liability in *Monell v. City of New York*:

> We conclude, therefore, that a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell v. City of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978). *See also Owen v. City of Independence*, 445 U.S. 622, 633, 100 S. Ct. 1398, 1406 (1980).

In order to state a constitutional claim against a school district under § 1983, then, a plaintiff must demonstrate that the constitutional violation occurred in accordance with official government policy or firmly entrenched custom. *Brown v. Houston Indep. Sch. Dist.*, 763 F. Supp. 905 (S.D. Tex. 1991), *aff'd*, 957 F.2d 866 (5th Cir. 1992), *cert. denied*, 113 S. Ct. 198 (1992); *Worsham v. City of Pasadena*, 881 F.2d 1336 (5th Cir. 1989). The Fifth Circuit has noted that the plaintiff's description of the government's policy or custom and its relationship to the underlying constitutional violation cannot be conclusory, but must contain specific facts. *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997). A school district may be held liable only if the constitutional injury was caused by an official policy or custom promulgated by government officials who have final policy making authority. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120-21 (1992). Under Texas law, the final policy-making authority for an independent school district rests with the school district's board of trustees. *Jett v. Dallas Indep. Sch. Dist.,* 7 F.3d 1241, 1245 (5th Cir. 1993); *Gonzales v. Ysleta Indep. Sch. Dist*., 996 F.2d 745, 752 (5th Cir. 1993).

In their First Amended Complaint, Plaintiffs do not allege ***any facts*** that would show that the Houston ISD School Board had any involvement in what happened to Plaintiff I.L. Plaintiffs have not alleged that the HISD Board of Education formally adopted any actual policies, regulations, bylaws, or ordinances that contributed to Plaintiff I.L.'s injuries, nor that the Board permitted "persistent and widespread practices" or "practices that are permanent and well settled and deeply embedded traditional ways of carrying out policy." *Bennett v. City of Slidell*, 728 F.2d 762 768 (5th Cir. 1984). Plaintiffs do state that "Defendant HISD Board knew or should have known of the assault which took place and failed to take any appropriate action to protect I.L. and to remedy the situation" (First Amended Complaint, ¶ 64.) But they allege no facts as

to why or how the HISD Board of Education – an entity that oversees 287 schools[1] – "knew or should have known" about Plaintiff I.L.'s assault.  "Knew or should have known" is a standard, not a factual allegation.  To the extent that their allegation that the Board "failed to take any appropriate action to protect I.L….." refers to protecting her from the assault, then Plaintiffs have their causation allegations backwards; there is no evidence and no allegations that the HISD Board had any knowledge prior to August 15, 2014 that would have reasonably led them to predict that an assault was going to occur.  As such, Plaintiffs' allegations in their First Amended Complaint are legally insufficient to avoid dismissal under Rule 12(b)(6) under the *Twombly-Iqbal* standard.

Plaintiffs' deficiencies in their First Amended Complaint are analogous to those identified by the Supreme Court in *Iqbal* itself. *Ashcroft v. Iqbal,* 129 S. Ct. 1937 (2009) was a lawsuit brought by a September 11 detainee against a number of defendants regarding his arrest and detention; however, the appeal only dealt with the claims asserted individually against John Ashcroft, the former United States Attorney General, and Robert Mueller, the Director of the FBI. The plaintiff alleged that Ashcroft and Mueller "each knew of, condoned, and willfully and maliciously agreed to subject" the plaintiff to harsh conditions of confinement "as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest," naming Ashcroft as the "principal architect" of the policy, and Mueller as "instrumental in [its] adoption, promulgation, and implementation." *Id*. at 1944. The Supreme Court acknowledged that asserting a claim against a federal official under *Bivens* was the federal analog to suits against state official under 42 U.S.C. § 1983, and that in both cases the government or supervisory officials could not be held liable for the unconstitutional conduct of

---

[1] *See* http://www.houstonisd.org/domain/7908 (visited November 7, 2016).

their subordinates under a theory of *respondeat superior*, but could only be held liable for their

own individual acts that violated the Constitution:

> In a § 1983 suit or a Bivens action—where masters do not answer for the torts of
> their servants—the term "supervisory liability" is a misnomer. Absent vicarious
> liability, each Government official, his or her title notwithstanding, is only liable
> for his or her own misconduct.

*Id*. at 1948-49.

The Court then applied the pleading standards of Rule 8, as interpreted in *Twombly*, to

the allegations made in the plaintiff's pleadings against Ashcroft and Mueller, noting that Rule 8

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. at

1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007),). The Court ruled that "[a]

pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause

of action will not do'," and that a complaint will not suffice if "it tenders 'naked assertion[s]'

devoid of 'further factual enhancement'." *Id*. (citing *Twombly*, 550 U.S. at 555, 557).  The Court

then held that alleging that Ashcroft and Mueller "knew of, condoned, and willfully and

maliciously agreed to subject [him]" to harsh conditions of confinement "as a matter of policy,

solely on account of [his] religion, race, and/or national origin and for no legitimate penological

interest," were conclusory allegations that did not meet the pleadings standards of Rule 8, as

interpreted in *Twombly*.

In *Fitzgerald v. Barnstable Sch. Comm.,* 555 U.S. 246, 129 S.Ct. 788 (2009), where the

Court held that Title IX did not foreclose a plaintiff from bringing additional claims under

Section 1983 for gender discrimination based on student-to-student sexual harassment, the Court

cautioned that the Section 1983 claim against the school district was subject to the *Monell*

standard:

> Even where particular activities and particular defendants are subject to both Title
> IX and the Equal Protection Clause, the standards for establishing liability may

> not be wholly congruent. For example, a Title IX plaintiff can establish school district liability by showing that a single school administrator with authority to take corrective action responded to harassment with deliberate indifference….A plaintiff stating a similar claim via § 1983 for violation of the Equal Protection Clause by a school district or other municipal entity must show that the harassment was the result of municipal custom, policy, or practice. *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

*Id*. at 257-58, 129 S. Ct. at 797.  In *Doe 20 v. Bd. of Educ. of Cmty. Unit Sch. Dist. No. 5*, 680 F. Supp. 2d 957 (C.D. Ill. 2010), the court rejected entity liability for claims of sexual abuse of students under Section 1983, where there was no plausible inference of an unconstitutional policy, practice or custom on the part of the school district.  *Id.* at 975.

Numerous courts since *Twombly* and *Iqbal* have held that a plaintiff must plead specific facts to demonstrate the existence of a custom, policy or practice sufficient to establish liability under *Monell*, or risk having their claims against the governmental entity dismissed under Rule 12(b)(6). In *B.A.B. v. Board of Educ. of the City of St. Louis*, 698 F.3d 1037 (8th Cir. 2012), plaintiffs asserted various constitutional claims under § 1983 against their school district arising out of vaccinations to which they claimed they had not consented. The lower court dismissed the claims against the school district under *Iqbal*, "because plaintiffs' failure-to-train allegations merely recited elements of their causes of action and asserted legal conclusions without sufficient factual support to make the claims plausible." *Id.* at 1040. The Court of Appeals agreed and upheld the dismissal of the claims against the school district under Rule 12(b)(6). *Id.* at 1040-41.

In *Kean v. Henry*, 2013 WL 1802632 (3d Cir. 2013), a retired state trooper claimed that after he had spoken publicly against the merger of two municipal police departments into a regional police authority – which he claimed was being done solely to increase the pay and benefits of the local officers – local officers engaged in a campaign of petty harassment against

him, to retaliate for his public comments.  The Third Circuit upheld the dismissal of his claims

against the City:

> We agree with the District Court that the Keans fail to satisfy the requisite elements of a *Monell* claim. As the District Court correctly noted, the Keans' complaint contains only the following allegations: that the Regional Police failed to timely respond to Kean's request for assistance in removing a construction site nuisance; that Henry and Kean verbally argued at a West Donegal meeting; and that Henry stopped Kean without probable cause. These allegations are insufficient to state a claim under *Iqbal* because they fail to contain sufficient factual matter to make it plausible on the face of the complaint that defendants are responsible for a policy or custom that violated the Keans' constitutional rights. Although we agree with the District Court's statement that Kean may have been treated poorly by officers, we also agree that the Keans have failed to allege any facts indicating that the municipalities took any action in accordance with an unlawful policy, practice, or custom under *Monell*.

*Id*. at *2.

In *Gray v. City of Roswell*, 486 Fed.Appx. 798 (11th Cir. 2012), the plaintiff brought a

civil rights claim under § 1983 for false arrest.  To satisfy the *Monell* standard for municipal

liability, she alleged that (1) the City had failed to properly train its police officers, (2) the

officers' actions were within the policy, practice, custom, or procedure of the City, (3) the City

ratified the officers' conduct, and (4) all City officers routinely violate the Fourth and Fourteenth

Amendments.  The Court held that this was insufficient to survive a motion to dismiss:

> A municipality may only be held liable for the actions of law enforcement officers when official policy or custom causes the constitutional violation.  Gray does not recite any facts or policies which would support a claim against the City. Gray only makes "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949. This is not sufficient to survive a motion to dismiss, and the district court properly dismissed the claims against the City.

*Id*. at 800-801;  *see also Johnson v. City of Wakefield*, 483 Fed.Appx. 256 (6th Cir. 2012)

(dismissing numerous constitutional retaliation claims under *Iqbal* because the plaintiff had not

pled facts showing a City policy or custom to retaliate sufficient to establish liability under

*Monell*);  *Unger v. City of Mentor*, 387 Fed.Appx. 589, 592 (6th Cir. 2010) (dismissing First

Amendment claim against City that plaintiff was terminated for requesting reclassification so she could join a union, "[b]ecause Unger does not allege misconduct by the City itself or that a city policy or custom authorized Cooperrider's alleged misconduct…"); *Palermo v. Town of North Reading*, 370 Fed.Appx. 128, 130 n. 4 (1st Cir. 2010) (finding in unconstitutional takings case that allegation that "the actions, decisions, and policies" of the Town "deprived the Plaintiffs of all economically beneficial use of the Premises" was "not nearly sufficient," under *Twombly* and *Iqbal*, to support a *Monell* claim).

In all of the foregoing cases, the plaintiffs made some effort in their pleadings to plead the *Monell* standard, usually by reciting the boilerplate *Monell* test for municipal liability; the courts simply found that the plaintiffs had not pled sufficient facts to support their "formulaic recitation of the elements of a cause of action" – in the words of *Twombley*, that they had made "naked assertions devoid of further factual enhancement." *Twombley*, 550 U.S. at 557. Although Plaintiffs' Original Complaint was devoid of even the boilerplate allegations found insufficient in *Twombley*, they at least make some effort in their First Amended Complaint to plead the *Monell* standard – but their allegations still fall far short of what *Twombly* and *Iqbal* require to support a *Monell* claim.  For example, Plaintiffs allege that "[t]he firmly entrenched custom of Defendants HISD and HISD Board to tolerate the misconduct carried out against I.L. is exemplified by the acts and omissions of school district personnel from different departments, work locations, levels of authority and levels of responsibility."  (First Amended Complaint, ¶ 91.)  But they allege no facts as to why or how the HISD Board of Education has a "firmly entrenched custom" of tolerating misconduct.  Instead, this is just a fancy way of pleading respondeat superior liability – that because various supervisors (Allen, Omogbehin, and/or "Doe") did not, in their opinion, take Plaintiff I.L.'s allegations seriously enough, it must be the

HISD Board's fault.  These are the "naked assertions devoid of further factual enhancement" that *Twombley* said were insufficient.  *See Twombley*, 550 U.S. at 557.

The factual deficiencies in Plaintiffs' *Monell* allegations are made very clear in their "failure to train" claim.  Plaintiffs do allege that "Defendants HISD and HISD Board have and/or had unconstitutional customs or policies of failing to adequately train and supervise school district employees with regard to preserving, maintaining and protecting students from violations of their right to personal security, bodily integrity and equal protection of law" (First Amended Complaint, ¶ 92), but they allege no facts to show what training school employees like Allen should have had but didn't, or what training they did have that was supposedly inadequate. "Failure to train" is not a separate cause of action under Section 1983, but is simply one method for proving entity liability for the violation of an independent constitutional right.  *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) ("*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation.")   While "[t]here are 'limited circumstances' in which a local government will be held liable because it inadequately trained or supervised its employees, who then infringed upon a plaintiff's constitutional rights," *Thomas v. Roberts*, 261 F.3d 1160, 1173 (11th Cir. 2001), *vacated and remanded for reconsideration*, 536 U.S. 953, 122 S. Ct. 2653, *affirmed and reinstated*, 323 F.3d 950 (11th Cir. 2003) (citing *Gold v. City of Miami,* 151 F.3d 1346, 1350 (11th Cir. 1998)), the scope of failure to train liability is a narrow one.  *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001).

To make out a "failure to train" claim, the plaintiff must show three things:

(1) the training or hiring procedures of the municipality's policymaker were inadequate;

(2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and

(3) the inadequate hiring or training policy directly caused the plaintiff's injury.

*Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996).  In *City of Canton v. Harris*, 489 U.S. 378 (1989), the Supreme Court held that a "failure to train" plaintiff must show that the "need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *Id.* at 390.  The failure to train must be an intentional choice, not a mere oversight.  *Id.* at 387.  Plainly, even "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable."  *Id.* at 391.  To show deliberate indifference, a plaintiff generally must demonstrate a "pattern of similar constitutional violations by untrained employees."  *Connick v. Thompson*, 563 U.S. 51, 131 S. Ct. 1350, 1360 (2011). In the absence of previous violations, a plaintiff must show the alleged violation was a "highly predictable consequence" of a failure to train. *Bd. of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 398 (1997) (citing *Canton v. Harris*, 489 U.S. 378, 390 (1989) ("[I]t may happen. . . that the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.").

To make out a "failure to train" claim, Plaintiffs must show that the alleged inadequate training policy directly ***caused*** Plaintiff I.L.'s injury.  *Baker*, 75 F.3d at 200.  As noted above, Plaintiffs have not pled any facts that would show what training they believe that the District should have provided to Defendants Allen or Omogbehin that would have prevented Plaintiff I.L.'s alleged injuries.  More importantly, Plaintiffs fail to allege facts that would show that that there was a demonstrable need for such training in the first place.  Government entities are

generally not required to be able to predict what training might be needed to one day prevent an incident from happening.  Instead, to show deliberate indifference, a plaintiff generally must demonstrate a "pattern of similar constitutional violations by untrained employees."  *Connick*, 131 S. Ct. at 1360.  When prior incidents are used to show a pattern, they "must have occurred for so long or so frequently that the course of conduct ***warrants the attribution to the governing body of knowledge*** that the objectionable conduct is the expected, accepted practice of city employees."   *City of Houston v. Piotrowski*, 237 F.3d 567, 579 (5th Cir. 2001) (emphasis added).

Plaintiffs, however, have not alleged facts in this case that would suggest that there were any prior incidents of similar behavior, either by Allen or anyone else.  In rejecting the failure to train claim in *Thomas v. Roberts*, the Eleventh Circuit noted that "the students have failed to demonstrate that District personnel are recurrently faced with situations which are so similar to the facts of the instant case that the need for training would be obvious."  *Thomas*, 261 F.3d at 1173.  And the need for training must be obvious to the Houston ISD Board of Education; as the Fifth Circuit has noted, "[a]ctual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority" *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984).   In other words, the pattern has to be significant enough to come to the attention of the school board, which then ignores the need for additional training, and that lack of training then causes the injury to the Plaintiff.  But Plaintiffs have alleged no facts that would suggest that a need for training was so obvious to the Houston ISD Board of Education that municipal liability can be attributed to the District.

To the extent Plaintiffs claim that they should be entitled to conduct discovery to ascertain the existence of other similar incidents, this argument was rejected by this Court in

*Jones v. Nueces County, Texas*, 2012 WL 3528049 (S.D. Tex. 2012).   There, this Court considered § 1983 excessive force and retaliation claims brought by a pretrial detainee, who alleged that a prison guard had slammed him against the wall and kicked him several times after a heated discussion.  Although the plaintiff alleged that the excessive force arose out of a policy or custom of the County, the County responded that the Complaint contained mere conclusions or recitations of elements of claims rather than creditable facts, with which the Court agreed. The plaintiff then argued that he needed time to conduct discovery to figure out if the County had a policy of allowing excessive force, but the Court said "No":

> Federal practice does not allow this. Jones' "plead first and discover if there are supporting facts later" is exactly the problem that the Supreme Court sought to remedy in *Twombly* and *Iqbal*. The case proceeds to discovery only if the complaint contains enough facts to give rise to a reasonable expectation that discovery will reveal evidence of the elements of the claim.

*Id*. at *4 (citing *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009)).  The Court then dismissed the excessive force claim against the County, finding that the allegations in the Complaint were insufficient under the *Twombly/Iqbal* test.

Because Plaintiffs assert no **__facts__** to support their conclusory opinion that Plaintiff I.L.'s alleged constitutional deprivation resulted from a specific District policy, custom, or practice, this is nothing more than a suit against the District on *respondeat superior.*  As such, Plaintiffs' allegations in their First Amended Complaint are legally insufficient under the *Twombly-Iqbal* standard, and Plaintiffs' Section 1983 claims against the District should be dismissed under Rule 12(b)(6).

**C.      All tort claims against Defendants Omogbehin, Allen and "Doe" should be dismissed pursuant to the election of remedies provision of the Texas Tort Claims Act.**

As noted above, Plaintiffs' First Amended Complaint retains the intentional infliction of emotional distress claim against all Defendants (to now include Defendant "Doe"), and changes

---

the negligent infliction of emotional distress claim to a pure negligence claim.   However,

Plaintiffs' tort claims against all of the Individual Defendants must still be dismissed under the

election of remedies provision of the Texas Tort Claims Act.  *See* TEX. CIV. PRAC. & REM. CODE

§ 101.106.  The Texas Tort Claims Act ("TTCA") provides the exclusive means by which a

plaintiff may, in certain limited circumstances, bring tort claims against a governmental unit in

Texas. *See* TEX. CIV. PRAC. & REM. CODE § 101.021; *see also Mission Consol. Indep. Sch. Dist.*

*v. Garcia,* 253 S.W.3d 653, 659 (Tex. 2008).  The TTCA contains an election of remedies

provision, which states:

> The filing of a suit under this chapter against a governmental unit constitutes
> an irrevocable election by the plaintiff and immediately and forever bars any
> suit or recovery by the plaintiff against any individual employee of the
> governmental unit regarding the same subject matter . . . if a suit is filed under
> this chapter against both a governmental unit and any of its employees, the
> employees shall immediately be dismissed on the filing of a motion by the
> governmental unit.

TEX. CIV. PRAC. & REM. CODE §§ 101.106(a), (e) (emphasis added). By requiring the plaintiff to

make an irrevocable election to either sue the government or the employee individually, the

TTCA "narrows the issues for trial and reduces delay and duplicative litigation costs." *Mission*

*Consolidated,* 253 S.W.3d at 657.

Notably, "all tort theories alleged against a governmental unit, whether it is sued alone or

together with its employees, are assumed to be under the Tort Claims Act for purposes of section

101.106." *Id.* at 659 (internal citations omitted). This includes claims for which the TTCA does

*not* waive immunity—including intentional torts—even if the plaintiff does not invoke or refer to

the statue in his pleading. *See, e.g., Bustos v. Martini Club,* 599 F.3d 458, 463 (5th Cir. 2010).;

*see also Texas Department of Aging and Disability Services v. Cannon*, 453 S.W.3d 411 (Tex.

2015) ("We have held that tort claims against the government are (or could be) brought "under

this chapter" regardless of whether the Tort Claims Act waives immunity for those claims.");
*Franka v. Velasquez,* 332 S.W.3d 367, 379–80 (Tex. 2011).

The Texas Tort Claims Act "encourages, and in effect mandates, plaintiffs to pursue lawsuits against the governmental units rather than their employees." *Tex. Adjutant Gen.'s Office v. Ngakoue (TAGO),* 408 S.W.3d 350, 350 (Tex. 2013). Consequently, if a governmental employee is named in his official capacity, or sued for acts allegedly committed in the general scope of his employment, then the tort claims have been effectively asserted against the governmental entity and the individual employee must be dismissed upon motion by the governmental entity. *Molina v. Alvarado*, 463 S.W.3d 867, 870-71 (Tex. 2015); *Franka v. Velasquez,* 332 S.W.3d 367, 382 (Tex. 2011); *TAGO*, 408 S.W.3d at 357 (holding that claims based on conduct within the scope of employment is not a suit against the employee; it is "in all but name only, a suit against the governmental unit.").

In sum, immediate dismissal of an individual defendant is required under the Texas Tort Claims Act if:

    a. The defendant constitutes an "employee" of a governmental unit under the statute;

    b. The plaintiff has asserted any common law tort claims against the governmental employee; and

    c. The plaintiff has asserted tort claims—or could have asserted tort claims—against the governmental unit arising from the same subject matter (irrespective of whether the plaintiff actually asserted such claims against the governmental unit or whether the claims would be viable against the governmental unit).

*See Franka,* 332 S.W.3d at 378; *accord Univ. of Tex. Health Science Center at Houston v. Crowder,* 349 S.W.3d 640, 648-49 (Tex. App.—Houston [14th Dist.] 2011).

The TTCA defines employees as "a person, including an officer or agent, who is in the paid service of a governmental unit . . . [but not] an independent contractor . . . or a person who performs tasks the details of which the governmental unit does not have the legal right to

control." TEX. CIV. PRAC. & REM. CODE § 101.001(2). Plaintiffs identify Defendants Omogbehin and Allen as "employees" of Houston ISD. (*See* First Amended Complaint at ¶¶ 7, 9.) Plaintiffs also assert that Defendant Doe "is the unknown HISD employee Defendant who may have been responsible for secondary schools in HISD…" (*Id.* at ¶ 8.) Therefore, these individuals plainly qualify as employees under Section 101.001(2) of the TTCA. Plaintiffs also have indisputably alleged common law tort claims against the Individual Defendants for intentional infliction of emotional distress and negligence. (First Amended Complaint, ¶¶ 94-101.)

Plaintiffs' tort claims are explicitly asserted against both the Individual Houston ISD Defendants and Houston ISD itself as a governmental entity. (First Amended Complaint, ¶¶ 94-101.) The headers of both Count III and Count IV state that they are being asserted "Against All Defendants." (First Amended Complaint, p. 29.) By asserting tort claims against both the governmental entity and its employees, Plaintiffs have irrevocably elected to sue the District only. *See, e.g., Williams v. City of Port Arthur,* No. 1:10-cv-823, 2012 LEXIS 77000, at *61-62 (E.D. Tex. June 1, 2012) (Crone, J.) (holding that the plaintiff made an irrevocable election by initially suing the governmental entity and "forever relinquished" his right to recover against an individual employee, even though he amended his pleadings and dismissed the governmental unit before the defendant filed a motion under the TTCA). As such, Houston ISD's motion to dismiss the Individual Houston ISD Defendants should be immediately granted pursuant to Section 101.106(e) of the Texas Civil Practice and Remedies Code, and the intentional infliction of emotional distress and negligence claims against Defendants Omogbehin, Allen and "Doe" should be dismissed in their entireties.

**D.      Sovereign immunity bars all state law tort claims against the District.**

As noted above, Plaintiffs assert common law tort claims against the District for intentional infliction of emotional distress and negligence. (First Amended Complaint, ¶¶ 94-

101.)  Houston ISD is absolutely immune from the tort claims asserted by Plaintiffs. Texas school districts retain their sovereign/governmental immunity from all common law claims unless the Texas Legislature has expressly waived immunity in a specific statute.  *See Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 655 (Tex. 2008); *see also Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978); *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49 (Tex. 1992); *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617 (Tex. 1987). Under the Texas Tort Claims Act, the *only* permissible tort claim against a *school district* is a claim based on misuse of a motor vehicle.  *See* Tex. Civ. Prac. & Rem. Code § 101.051. As the Texas Supreme Court has noted:

> The Act generally waives governmental immunity to the extent that liability arises from the "use of a motor-driven vehicle or motor-driven equipment" or from "a condition or use of tangible personal or real property." *Id.* § 101.021. For school districts, the Act's waiver is even narrower, encompassing only tort claims involving the use or operation of motor vehicles. *Id.* § 101.051.

*Mission Consolidated*, 253 S.W.3d at 655-56; *see also Barr*, 562 S.W.2d at 846 ("With respect to the liability of a school district, however, the Legislature provided for a more limited waiver of immunity. Section 19A [now § 101.051] of the Act states that a school district's liability is limited to causes of action arising from the use of motor vehicles.").

Consequently, as a matter of law, claims such as negligence and intentional infliction of emotional distress may not be asserted against a Texas school district.  *See, e.g.*, *Barr*, 562 S.W.2d at 846 (negligence); *LeLeaux.*, 835 S.W.2d 49 (same); *Doe v. S&S Consolidated Indep. Sch. Dist.*, 149 F.Supp.2d 274, 302 (E.D. Tex. 2001) (dismissing student's physical abuse claims; Texas school districts "are generally not liable in tort actions"); *Jathanna v. Spring Branch Indep. Sch. Dist.*, 2012 W 6096675 at *5 (S.D. Tex., Dec. 7, 2012) (unpublished) (infliction of emotional distress and negligence claims); *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617 (Tex. 1987) (negligent supervision of students); *Midland Indep. Sch. Dist. v. Watley*, 216 S.W.3d

374, 382 & n. 8 (Tex. App. – Eastland 2006, no pet.) (intentional infliction of emotional distress and assault). Because the Plaintiffs have not stated any tort claim for which immunity has been waived, Houston ISD moves to dismiss the Plaintiffs' intentional infliction of emotional distress and negligence claims.

### E.    Plaintiffs' claims for punitive damages against the District under all theories fail as a matter of law.

Plaintiffs seek punitive damages in this matter against all Defendants. (Complaint, ¶ 83.) Punitive damages are not available under Title IX. Title IX was enacted pursuant to the Spending Clause, and punitive damages are not available as a matter of law under Spending Clause legislation. *See generally Barnes v. Gorman*, 536 U.S. 181, 185-88 (2002). When Congress acts pursuant to its power under the Spending Clause, the legislation is "much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions." *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 639 (1999) (citation omitted); *see also Mercer v. Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002) ("[P]unitive damages are not available for private actions brought to enforce Title IX."); *Schultzen v. Woodbury Cent. Cmty. Sch. Dist.*, 187 F. Supp. 2d 1099, 1128 (N.D. Iowa 2002) ("In light of the well-settled presumption of municipal immunity from punitive damages and the absence of any indicia of congressional intent to the contrary, the court finds that punitive damages are unavailable against local governmental entities under Title IX."); *Doe v. Londonderry Sch. Dist.*, 970 F. Supp. 64, 76 (D.N.H.) ("Therefore, the court holds that punitive damages are not available against municipalities under Title IX."), *opinion modified on denial of reh'g,* 32 F. Supp. 2d 1360 (D.N.H. 1997). The Defendants therefore move to dismiss Plaintiffs' request for punitive damages under Title IX.

The Plaintiffs also seek punitive damages against HISD under other theories.  As a matter of law, punitive damages are not available against municipalities and other local governments under 42 U.S.C. § 1983.  *See City of Newport v. Fact Concerts Inc.*, 453 U.S. 247 (1981); *Mosley v. Houston Comm. College Sys.*, 951 F.Supp. 1279, 1290 (S.D. Tex. 1996).  Additionally, even if the District is not immune from Plaintiffs' tort claims, the Tort Claims Act does not authorize punitive or exemplary damages against government entities.  *See* TEX. CIV. PRAC. & REM. CODE § 101.024.  Accordingly, Houston ISD moves to dismiss all claims against it for punitive damages.

## CONCLUSION AND PRAYER

For the forgoing reasons, Defendant Houston Independent School District requests that this Court immediately dismiss all of Plaintiffs' claims against it in their entirety, with the exception of Plaintiffs' Title IX claim.  Defendant Houston Independent School District moves that the Court dismiss "Defendant Houston Independent School District Board of Education" from this matter as a separate party, on grounds of redundancy.  The Defendants move to dismiss the tort claims asserted against Defendants Omogbehin, Allen and "Doe" in their individual capacities, pursuant to the election of remedies provision of the Texas Tort Claims Act. The Defendants further request that the Court grant them such remedies, both at law and in equity, to which they have shown themselves entitled.

Respectfully submitted,

THOMPSON & HORTON LLP

By:   /s/ Christopher B. Gilbert

Christopher B. Gilbert
State Bar No. 00787535
Southern District No. 17283
Attorney-in-Charge

Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027
Telephone:      (713) 554-6744
Fax:               (713) 583-7698
cgilbert@thompsonhorton.com

**ATTORNEYS FOR THE DEFENDANTS**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing pleading has been served on all counsel of record through the Court's electronic filing system, on November 7, 2016, 2016:

> Ms. Susan H. Soto
> The Law Office of Susan H. Soto
> 6300 West Loop South, Suite 405
> Bellaire, Texas 77401
> ***Attorney for the Plaintiff***

 /s/ Christopher B. Gilbert
Christopher B. Gilbert