IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HECTOR AYALA AND ITZA AYALA AS REPRESENTATIVES AND NEXT FRIENDS OF I.L., A MINOR, *Plaintiffs*, | § § § § § § | CIVIL ACTION NO. 4:16-cv-02503 |
| v. | § § | |
| THE HOUSTON INDEPENDENT SCHOOL DISTRICT; HARRISON PETERS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; JUSTIN FUENTES, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; ROBERT SCOTT ALLEN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY, *Defendants*. | § § § § § § § § § § | TRIAL BY JURY DEMANDED |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

### PRELIMINARY STATEMENT

1. This is an action brought pursuant to Title IX of the Education Amendments of 1972, 209 U.S.C. Sections 1681 to 1688, to obtain relief for I.L., a minor, for sexual discrimination, sexual harassment, and violation of equal protection rights that occurred at the High School for the Performing and Visual

Arts, a public school in the Houston Independent School District in Houston, Texas.

2. By and through their attorney, Susan H. Soto, Hector Ayala and Itza Ayala state that the Defendants violated their daughter's rights under the equal rights provisions of Article I of the Texas Constitution. I.L.'s rights under the U.S. Constitution were also violated through Defendants' actions.

## JURISDICTION

3. Jurisdiction of this court is invoked pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681 - 1688, and pursuant to 42 U.S.C. § 1983.

## VENUE

4. Venue is proper in this judicial district pursuant to the provisions of 28 U.S.C. § 1391(b)(2) in that this is a civil action wherein a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## PARTIES

5. **I.L.** is an individual Hispanic female born in 1998 who was a minor at the time that this action was filed and who resides in Houston, Texas. At all times relevant to this action, I.L. was a student attending the High School for the Performing and Visual Arts ("HSPVA") in the Houston Independent School District in Houston, Texas, was a citizen of the United States, and was a person entitled to

the protection of the Education Amendments of 1972 and the Civil Rights Restoration Act of 1987.

6. **Plaintiffs Hector Ayala ("Father") and Itza Ayala ("Mother")** are the parents, guardians, representatives and Next Friends of I.L., who is a citizen of the State of Texas. They bring this suit on behalf of I.L. pursuant to Federal Rule of Civil Procedure 17(c)(1).

7. **Defendant Harrison Peters** ("Peters") is, and at all times material hereto was, an individual working as an employee and agent for Defendant Houston Independent School District ("HISD"). In 2014, Peters was HISD's Chief High School Officer. This action is brought against Peters both individually and also in his official capacity. Defendant Peters may be served with process at 4400 West 18th Street, Houston, Harris County, Texas 77092.

8. **Defendant Justin Fuentes** ("Fuentes") is, and at all times material hereto was, an individual working as an employee and agent for Defendant HISD. In 2014, Fuentes was the Director of High Schools in HISD. This action is brought against Fuentes both individually and also in his official capacity. Defendant Fuentes may be served with process at 4400 West 18th Street, Houston, Harris County, Texas 77092.

9. **Defendant Robert Scott Allen** ("Allen") is, and at all times material hereto was, an individual working as an employee and agent of Defendant HISD as the principal of HSPVA. This action is brought against Allen both individually and also in his official capacity. Defendant Allen may be served with process at 4001 Stanford Street, Houston, Harris County, Texas 77006.

10. **Defendant Houston Independent School District** ("HISD" or the "District") is duly organized and exists under the laws of the State of Texas and at all times relevant to this action, was, and is, a recipient of funding within the meaning of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. Defendant HISD may be served with process by serving the superintendent of schools, Dr. Richard Carranza, at 4400 West 18th Street, Houston, Harris County, Texas 77092.

11. Plaintiffs are informed and believe, and on such grounds allege, that at all relevant times, each Defendant was the authorized agent of each co-Defendant and was acting within the course, scope and authority of such agency. Each Defendant, when acting as a principal, authorized, ratified or affirmed each act or omission of each other Defendant acting as an agent.

12. Defendants' ratification of conduct and failure to respond to Plaintiffs' complaints or to stop harassment complained of herein despite their duty to do so and despite Plaintiffs' requests and pleas, created an intimidating, hostile, offensive,

and abusive school environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*.

## CONDITIONS PRECEDENT

13. All conditions precedent have been performed or have occurred.

## FACTS

14. During the summer preceding the 2014-2015 school year, I.L. was an incoming sophomore at HSPVA. She was on the HSPVA campus on August 15, 2014 in order to staff and help with the school's "Artist Academy," a new student welcome event.

15. On the morning of August 15, 2014, male HSPVA student S.S.[1] lured I.L. away from the larger group under the pretense of needing help to look for a bass amplifier for a show that was to be performed at HSPVA at lunch time. Having known S.S. since the prior school year, I.L. believed she was to help S.S. look for an amplifier and had no expectation that anything else would occur. The two students went to several classrooms looking for the music equipment and ultimately entered room 205, which was not monitored or supervised by any HISD employee or other adult.

---

[1] Plaintiffs have knowledge of the attacker's name but will only identify him with his initials in this lawsuit.

16. S.S. grabbed I.L. by her upper arms from the front and pushed I.L. against a stack of chairs in an inner office in the room, causing I.L. to hit her head. S.S. began touching I.L.'s breasts as I.L. told S.S. "no" and "stop" repeatedly. They lost their balance and fell to the floor, where S.S. unfastened I.L.'s pants and used his hand to sexually assault I.L.

17. I.L. escaped a short time later and fled in shock to a quiet staircase at the end of the music hallway, where male HSPVA student C.F. found her crying. I.L. told C.F. what happened with S.S.; a concerned C.F. escorted I.L. to the girls' bathroom near the HSPVA administrative office in order to prevent any continuation of the attack and went to find help. Another HSPVA student, V.H., saw I.L.'s state (upset and in tears) and alerted HSPVA school counselor Travis Springfield ("Springfield").

18. Springfield took I.L. to his office and asked her to tell him what happened. I.L. gave an account of the assault and told Springfield that S.S. would not stop the assault after being told to do so. I.L. did not want S.S.'s attention or physical contact and had previously informed S.S. of this on multiple occasions.

19. I.L. told Springfield that S.S. had pressured her in the past to send him inappropriate photographs of herself and to engage in sexual intercourse, and she showed Springfield text messages exchanged between the two students that

Springfield characterizes as "mature remarks." In reality, the text messages contain vulgarities, S.S.'s crude references to his own genitalia and to I.L.'s body, and multiple examples of gender-based harassment and intimidation. It is unclear why Springfield minimized the shocking nature of the text messages in an undated written statement he provided.

20. HSPVA never provided I.L. with preventive education programs that address sexual harassment or sexual violence, which would have helped I.L. defend herself against S.S.'s unwanted attention and contact.

21. Springfield informed Defendant Allen and HSPVA assistant principal Mercy Alonso-Rodriguez ("Rodriguez") of I.L.'s outcry and at the direction of Defendant Allen, asked I.L. to provide a written statement. Defendant Allen simply introduced himself to Mother and Father after they arrived on campus on August 15, 2014 in response to the attack and then Defendant Allen excused himself to handle other things that required his attention that day. He left the matter for Springfield and Rodriguez to handle and did not report the assault to authorities, in violation of state law and local policy. Defendant Allen did not suggest, offer or provide any strategies that could or would be implemented to protect and support I.L. as a victim of sexual assault.

22. Officers from HISD's police department arrived at HSPVA sometime on August 15, 2014 and instructed Rodriguez to not report the incident to Texas Child Protective Services, in direct violation of Texas Family Code Section 261.101, which requires licensed Texas educators to report abuse, neglect, or commission of an offense under Section 21.11 of the Texas Penal Code.[2]

23. I.L. was treated at the Texas Children's Hospital Emergency Center on August 15, 2014. Her diagnosis was "sexual abuse of child or adolescent, initial encounter."

24. Assistant principal Rodriguez submitted an Incident Report to the HISD High Schools Office on August 15, 2014 that describes the attack as "sexual assault" and includes the comment, "[f]ollow up will occur when HISD Police notify us of their findings." Despite this report, the HSPVA principal, Defendant Allen, and the administrators over HISD high schools, Defendants Peters and Fuentes, failed to take remedial action, violating I.L.'s civil rights and those under Title IX.

25. The following week, on or about August 18, 2014, Defendant Allen told HSPVA assistant principal Larry Trout ("Trout") that HSPVA staff would wait for

---

[2]  Offenses generally known as "indecency with a child."

the results of the HISD police department investigation to determine if any assault had taken place.[3]

26. No one from HISD or HSPVA took action to eliminate the hostile environment in which I.L. now found herself, to prevent its recurrence, or to address its effects (or those of the sexual assault) on I.L. after the attack. Defendants' failure to take reasonable remedial action violates Title IX of the Education Amendments of 1972, 209 U.S.C. § 1681, *et seq.*

27. I.L. visited with school counselor Springfield on multiple occasions during the fall 2014 semester. She shared with him that because of the sexual assault, she was experiencing stress, anxiety, depression, and frustration. Springfield told I.L. on at least one occasion that he could not take her out of school "just because" I.L. didn't want to see a particular student.

28. I.L. was diagnosed with epilepsy on October 8, 2014 and underwent magnetic resonance imaging (an MRI test) on October 17, 2014.

29. I.L. struggled through the first semester of the 2014-2015 school year with depression, anxiety, and other effects of the sexual assault she suffered at HSPVA. As a result of her physical and psychological struggles after the attack, I.L. was frequently absent from school for days or parts of days. On October 21, 2014,

---

[3] Defendant Allen's directive is in direct contradiction to the expectations for schools under Title IX. *See* Para. 42, *infra*.

HSPVA staff member Isela Aguirre acknowledged I.L.'s "delicate health" in an email to Mother, but made no mention of strategies that had been, could or would be implemented to protect and support I.L. as a victim of sexual assault.

30. On October 28, 2014, HISD staff provided Mother with an Emergency Plan to address I.L.'s seizures, but made no mention of strategies that had been, could or would be implemented to protect and support I.L. as a victim of sexual assault.

31. On November 6, 2014, HSPVA staff member Timothy Glover ("Glover") emailed Mother and shared his concern about I.L.'s excessive absences and copied school counselor Springfield. Springfield responded to Glover's concerns by email and copied assistant principal Rodriguez on the correspondence. Rodriguez responded to Glover and Springfield's comments by saying, "[t]here's only so much we can do." Notably, Rodriguez made no mention of strategies that had been, could or would be implemented to protect and support I.L. as a victim of sexual assault.

32. I.L. was seen at The Children's Assessment Center on November 13, 2014 at the HISD police department's request, in order to secure an interview from I.L. about the sexual assault that took place at HSPVA. The Children's Assessment Center cares for and treats sexually abused children and their families in the Gulf Coast area.

33. Father, Mother, and I.L. all received counseling during the fall 2014 semester due to the stress and trauma of the attack.

34. I.L. regularly saw S.S. at lunch and forced herself to memorize where S.S. would go during the day so as to not bump into him in places where his class schedule required him to be. I.L. asked friends to walk her from class to class to avoid further encounters with S.S. alone.

35. Mother and Father made multiple and regular attempts during the fall 2014 semester to report to Defendant Allen as to the ongoing harassment and intimidation by S.S. Although the principal (Defendant Allen) knew of the attack on I.L. and should have known about the continued threatening and hostile environment, there was no investigation with respect to the assault, intimidation and harassment and no placement of attacker S.S. in a disciplinary alternative education program or juvenile justice alternative education program as required by Chapter 37 of the Texas Education Code.

36. During the fall 2014 semester, Mother and Father conferred with school counselor Springfield multiple times regarding the assault and its aftermath. They asked Springfield if S.S. would be transferred to another school and were told that HSPVA could not do anything with S.S. Mother discussed with Springfield the requirements of Title IX, including the investigation required of the school.

37. Not satisfied with the outcome of the meetings with Springfield, Mother and Father requested a meeting with Defendant Allen, but he would not honor that request. Assistant principal Trout explained that the matter was not important enough to require the school principal's involvement.

38. Mother and Father met with Trout on December 15, 2014, who told them the same thing that Springfield said. Mother and Father asked Trout if HSPVA staff could escort either S.S. or I.L. during class changes to prevent any further encounter – visual, verbal or physical proximity – and Trout refused to provide that safeguard. I.L.'s parents asked that arrangements be made during the lunch period to avoid contact (visual, verbal or physical proximity) between I.L. and her attacker, as well. That request was also denied. Mother complained to Trout that I.L. was being subjected to a hostile environment and Trout responded that there was "nothing" HSPVA staff could do.

39. In a memorandum to Defendant Allen dated March 10, 2015, Trout writes that during the December 2014 meeting with Mother and Father, Trout "advised the parents that the solution they asked for was not feasible because the police had told me [Trout] that it would take many more months to resolve this situation…I [Trout] also told the parents that [redacted]…had not been found guilty of any crime, as of this point."

40. Mother and Father presented Trout during the December 2014 meeting with a guidance memorandum from the U.S. Department of Education's Office for Civil Rights (commonly known as a "Dear Colleague" letter) dated April 4, 2011 and a print-out of the Office for Civil Rights' sexual harassment FAQ web page, both of which Trout included as attachments with his March 2015 memorandum to Defendant Allen. In the Dear Colleague letter, the Office for Civil Rights lists multiple examples of appropriate remedies that a school district could provide to a complainant that include but are not limited to: providing an escort to ensure that the complainant can move safely between classes and activities, moving the complainant or the alleged perpetrator to another school in the school district, and providing counseling and academic support services.

41. No one at HSPVA or in HISD – named Defendant in this lawsuit or otherwise – offered any of those remedies to I.L. to make her feel safe at school after the assault, and no one offered those remedies to I.L., even after her parents provided them in writing to the District on December 15, 2014.

42. The Dear Colleague letter that Mother and Father presented to HSPVA assistant principal Trout states: "the school's Title IX investigation is different from any law enforcement investigation, and a law enforcement investigation does not relieve the school of its independent Title IX obligation to investigate the conduct."

43. The Dear Colleague letter goes on to say: "[s]chools should not wait for the conclusion of a criminal investigation or criminal proceeding to begin their own Title IX investigation and, if needed, must take immediate steps to protect the student in the educational setting…nothing…should prevent a school from notifying complainants of their Title IX rights and the school's grievance procedures, or from taking interim steps to ensure the safety and well-being of the complainant and the school community while the law enforcement agency's fact-gathering is in progress."

44. After the unproductive meeting with Trout, Mother submitted an online complaint to the Office for Civil Rights on December 15, 2014. In the complaint, Mother states that "[t]he school has not done anything to protect my child and also has not done anything to the student who sexually assaulted my daughter…We have tried to contact Dr. Allen the principal of the school if we can have a meeting and we have been directed to the assistant principals…She [I.L.] sees him [S.S.] everyday and has been affecting her mentally and physically…Our daughter spoke with the school counselor a week ago…about how close S.S. was around her everyday because it makes her relive the incident everyday and how he is always around her friends. And the school counselor told her there was nothing that they could do and

she has to wait it out and find ways to cope." The Office for Civil Rights notified HISD of Mother's complaint against the school district on March 3, 2015.

45. With no record of seizures while at school during the previous school year, I.L. began to have seizures in class and in the school clinic at HSPVA. Having to see her attacker every day on campus started to take its toll on I.L.; school clinic records and emails from HSPVA staff indicate that I.L. had seizures on the following days at minimum: January 6, January 7, January 9, January 13, January 14, January 21, January 22, and February 2, 2015. Mother emailed HSPVA's school nurse on January 8, 2015 to alert school staff that I.L. had experienced seizures almost every day during the winter break and that I.L. was on two different medications in an attempt to reduce the now common seizures. HSPVA school nurse Cynthia Diaz reports that the seizure episodes made I.L. "appear upset and sad in a quiet way."

46. On January 15, 2015, assistant principal Rodriguez acknowledged in an email to Mother that I.L. was not "fully participating and benefiting from" the visual arts curriculum at HSPVA, but made no mention of strategies that had been, could or would be implemented to protect and support I.L. as a victim of sexual assault or to provide her the benefit of the HSPVA curriculum.

47. Mother emailed the HSPVA school nurse on January 16, 2015 and commented that stress makes I.L.'s epilepsy worse; the nurse's response only addressed paperwork for a release of medical information – there was no mention of strategies that had been, could or would be implemented to protect and support I.L. as a victim of sexual assault.

48. On February 2, 2015, I.L. unexpectedly ran into S.S. by literally bumping shoulders with him in the crowded hall during class change. The brief but powerful encounter made I.L. physically sick and cold, frightened, and anxious. HSPVA clinic records show that I.L. had a seizure that day after the encounter with S.S.

49. Struggling with her emotions for several months without relief and then bumping into S.S. at school, the situation became so desperate for I.L. that later on February 2, 2015, I.L. jumped out of a moving car and sustained multiple injuries as a result. The Houston Police Department responded to the incident and I.L. was admitted to Memorial Hermann Hospital on February 2, 2015.

50. Mother reported to an attorney at the Office for Civil Rights in an email dated February 3, 2015 that I.L. had been under a great deal of stress and could not "take it" any longer. Mother begged the attorney for help in transferring I.L. out of HSPVA and away from her attacker.

51. Mother and Father knew from their interactions with staff at the Children's Assessment Center that the center's post-traumatic stress disorder treatment program would not work if I.L. continued to see S.S. on a regular or daily basis.

52. No one from HISD or HSPVA had ever offered the family an option to transfer I.L. out of HSPVA. As a result of their own research, Mother and Father discovered that a provision in the No Child Left Behind Act allowed for crime victims to change schools outside of HISD's student transfer period. On February 13, 2015, Mother and Father submitted a letter to formally request I.L.'s transfer out of HSPVA – six months after the assault occurred. Assistant principal Rodriguez told the family that I.L. would only be permitted to return to the high school to which she was zoned, not to a school comparable to HSPVA.

53. Not willing to accept that I.L. would be the one to be constructively punished and who would certainly lose out on educational opportunities because of the incident of sexual violence at HSPVA, Mother and Father called everyone in HISD they thought could help them.

54. On February 12, 2015, psychologist Dr. Shannon Sniff wrote correspondence to HISD to inform them that I.L. was under her care for post-traumatic stress disorder and depression. Dr. Sniff commented that: "[t]he

current school environment is having a negative impact on [I.L.]'s emotional and physical health. She finds herself being exposed to an alleged perpetrator (fellow student), which triggers worsening of her psychiatric symptoms and difficulty performing well academically."

55. Father called HISD's Office of School Support on or about February 16, 2015 to request assistance. He reported to Blanca Saldana, a secretary in the School Support office, that he was "highly unsatisfied" with the manner in which HSPVA handled the situation and that the only feedback he received from the school was that the police department had to complete its investigation "before any action can take place at the school level."

56. Mother and Father received an email from assistant principal Rodriguez on February 16, 2015 informing them that HISD's Office of School Choice would contact them regarding their transfer request.

57. In 2015, Defendant Fuentes was a director in HISD's High Schools Office, where Defendant Peters was in charge. On February 20, 2015, Fuentes informed Mark Shenker ("Shenker"), HISD's assistant superintendent of school choice, via email, that he had spoken to Mother regarding I.L.'s transfer and asked Shenker to have someone from the school choice office contact Mother. Shenker's response was only to say that once he had the transfer request, he would approve and

process it. Mother and Father had submitted their transfer request a week prior to that email.

58. The obvious lack of knowledge of the HISD staff – or, at least, lack of consistency about how to handle a sexual assault victim's transfer request – became more apparent as James McSwain ("McSwain"), principal at HISD's Lamar High School, told Shenker on February 20, 2015 to ask Mother to contact McSwain's secretary, who would assist the family with the transfer application and subsequently process it.

59. Susan Boyd ("Boyd"), a secretary at Lamar High School, sent Mother an application for student transfer via email on February 23, 2015 and instructed Mother to complete and return it to Boyd so that the application could be submitted for approval to the department that oversees student transfers. Mother did so, and heard nothing for several days.

60. On March 2, 2015, Mother emailed Boyd to inquire about I.L.'s transfer, as it still had not been processed. Boyd informed Mother by return email that "it takes them a little time to get it [the transfer] in the system," despite the fact that Mother had specifically shared with Boyd via email on February 23, 2015 that the family wished to start the transfer process "as soon as possible" and that neither she nor Father wanted I.L. to miss any more days of instruction. Miraculously, less than

an hour after Mother's inquiry on the morning of March 2, 2015 regarding the status of I.L.'s transfer, Boyd emailed Mother to confirm that I.L. was in the system.

61. I.L. began attending classes at Lamar High School in HISD in March 2015. The sexual assault, harassment and lack of reasonable remedial action proximately caused I.L. to leave HSPVA, to suffer emotionally, and to lose esteem, future professional options, future earnings, and creative fulfillment in her chosen career of visual art. I.L. graduated from Lamar High School on August 20, 2016.

62. To date, the Office for Civil Rights has not issued findings or otherwise resolved Mother's complaint.

63. The District knew or should have known of the assault which took place and failed to take any appropriate action to protect I.L. and to remedy the situation. Defendants Peters, Fuentes and Allen knew or should have known of the assault which took place and failed to take any appropriate action to protect I.L. and to remedy the situation.

64. I.L., due to the assault and the ongoing harassment and intimidation after the assault, was denied the opportunity to take part in the normal activities of a high school student.

65. No Defendant took the necessary disciplinary actions against the student who sexually assaulted I.L. No Defendant advised the Plaintiffs regarding their Title

IX rights or the school's grievance procedure. No Defendant took interim steps to ensure I.L.'s safety and well-being while law enforcement fact-gathering was in progress. As a result of these failures, I.L.'s right to a non-hostile environment at school was denied.

66. As a direct and proximate result of Defendants' acts, I.L. sustained injuries to her body and suffered, and will suffer, severe mental and emotional distress in the future, all to her damage in an amount to be proven in court.

67. I.L. has suffered, and will continue to suffer, serious mental health problems, including but not limited to, depression, fear, anxieties, inability to function normally in social situations and in relationships with adults and peers. As a result of these problems, I.L. has undergone medical and psychological treatment and incurred medical expenses, all to her detriment and that of her parents.

68. As a proximate result of the acts of the Defendants, I.L. has sustained and is continuing to sustain damages in the form of medical expense, additional costs to her education, and general damages in an amount that has not been ascertained and that will be proven at trial.

69. As a proximate result of the acts of the Defendants, Plaintiffs Father and Mother have incurred medical expenses on behalf of their daughter, additional costs to I.L.'s education, and pain and suffering to themselves in observing their daughter

and her situation, plus general damages in an amount that has not been ascertained and will be proven at trial.

70. The conduct of the individual Defendants, was intentional, oppressive, malicious and/or in wanton disregard of the rights and feelings of I.L. and constitutes despicable conduct, and by reason thereof, Plaintiffs demand exemplary or punitive damages against the individual Defendants, in an amount appropriate to punish or make an example of them and their lack of proper remedial action on behalf of I.L.

**COUNT I. Sex Discrimination Pursuant to Title IX of the Education Amendments of 1972, Ch. 39, 86 Stat. 235, 20 U.S.C. §§ 1681 *et seq*. and Pursuant to the Civil Rights Restoration Act of 1987, 102 Stat. 29, § 1687 (Against Defendant HISD)**

71. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 70. Defendant HISD intentionally, willfully and without justification acted to deprive I.L. on the grounds of her sex (hereinafter referred to as "gender") of her rights, privileges and immunities secured by the laws of the United States, particularly her right to be free from discrimination in education on the grounds of her gender as provided by Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq*.

72. The Defendant District, despite knowledge and adequate opportunity to learn of the misconduct of its agents and employees, adopted, approved, and ratified these acts, omissions, and misconduct.

73. The gender-based harassment articulated *supra* was so severe, pervasive and objectively offensive that it deprived I.L. of access to educational opportunities or benefits provided by the school.

74. Defendant HISD created and/or subjected I.L. to a hostile environment in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681(a), because:

a) Plaintiff I.L. is a member of a protected class;

b) She was subjected to sexual harassment in the form of a sexual assault by another student;

c) She was subjected to harassment based on her gender; and

d) She was subjected to a hostile environment created by HISD's improper procedures and failure to properly investigate and/or address the sexual assault and subsequent harassment.

75. Defendant HISD and its officials had actual knowledge of the sexual assault and the resulting harassment of I.L. created by the school district's failure to

investigate and discipline I.L.'s attacker in a timely manner and consistent with its own policy and Federal and state law.

76. Defendant HISD's failure to promptly and appropriately respond to the sexual harassment resulted in Plaintiff I.L., on the basis of her gender, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in the school district's educational program, in violation of Title IX.

77. Defendant HISD failed to take immediate, effective remedial steps to resolve the complaints of sexual harassment and instead acted with deliberate indifference toward I.L.

78. Defendant HISD engaged in a pattern and practice of behavior designed to discourage and dissuade students who have been sexually assaulted and their parents from seeking protection. This practice constitutes disparate treatment of females and had a disparate impact on I.L.

79. I.L. has suffered emotional distress and physical and psychological damage, and her character has suffered from the harassment as a direct and proximate result of Defendant HISD's deliberate indifference to her rights under Title IX.

WHEREFORE, Plaintiffs pray for relief as hereafter set forth.

**COUNT II. Violation of 42 U.S.C. § 1983 (Against All Individual Defendants)**

80. Plaintiffs reallege and incorporate by reference as though fully set forth in Paragraphs 1 through 70.   In doing each and all of the acts alleged, individual Defendants were state actors acting under color of state law.

81. Individual Defendants each subjected I.L. to violations of her right to equal protection of law by failing to investigate S.S.'s misconduct, failing to appropriately discipline S.S., failing to adequately train and supervise Allen, and manifesting deliberate indifference to the sexual assault and ongoing hostile educational environment at HSPVA.

82. Individual Defendants are included in this lawsuit through a Section 1983 claim that relates back to I.L.'s rights under Title IX. Long understood as a vehicle to enforce an existing Federal right, a Section 1983 action is brought against a party who acted under color of state law; that is, a person who carries "a badge of authority of a State" and represented it in some way. *Monroe v. Pape*, 365 U.S. 167, 172 (1971).

83. Defendants Peters, Fuentes and Allen failed to preserve I.L.'s constitutional right to equal protection as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

84. Under the Equal Protection Clause of the Fourteenth Amendment, I.L. had the right to equal access to an educational environment free from harassment and discrimination.

85. The individual Defendants should have known that their response to sexual assault allegations must comply with Federal law, particularly as outlined in Title IX's published and widely promulgated regulations.

86. The individual Defendants do not have immunity against this claim because they violated I.L.'s right to equal protection under the law.[4] Particular acts that demonstrate their personal and direct participation in constitutional and statutory deprivation of I.L.'s right to an educational environment free of sexual innuendo, intimidation, assault and discriminatory animus and the right to equal protection of law include: Allen's failure to report the sexual assault to proper authorities and his failure to ensure that his staff did so, Allen's failure to take remedial action and implement a plan that would protect I.L. in the educational setting and his failure to ensure that his staff did so, Allen's improper instruction to assistant principal Trout to wait for the results of the HISD police department's

---

[4] Nor do individual Defendants Peters, Fuentes or Allen escape liability by possibly having delegated duties to their subordinates. Some of the duties that the individual Defendants failed to fulfill are non-delegable (i.e. reporting offenses under the Texas Family Code to proper authorities) and the subordinates, named *supra*, failed to follow the law and provide I.L. with an educational environment free from sexual assault and discriminatory animus and with equal protection of law. If the named Defendants depended on their subordinates to respond to I.L.'s attack in accordance with the law, their subordinates clearly let their supervisors down.

investigation to determine if an assault had occurred before taking any action at the campus level, Allen's failure to investigate the assault, intimidation and harassment that I.L. endured and his failure to recommend attacker S.S.'s placement in a disciplinary alternative education program or juvenile justice alternative education program (as required by the Texas Education Code). In regards to the particular acts that demonstrate Defendants Peters and Fuentes' personal and direct participation in constitutional and statutory deprivation of I.L.'s right to an educational environment free of sexual innuendo, intimidation, assault and discriminatory animus and the right to equal protection of law, examples include: their failure to respond in any way to the written report of sexual assault that was submitted to their office on August 15, 2014, their failure to report the sexual assault to proper authorities and their failure to ensure that HSPVA staff did so, their failure to instruct HSPVA staff to take remedial action and implement a plan that would protect I.L. in the educational setting, and their failure to offer I.L. the opportunity to change schools outside of the school district's transfer period (allowed by Federal law) thereby forcing I.L. to endure a hostile educational environment for six months. All individual Defendants failed to advise Plaintiffs of the Title IX grievance process and the HISD grievance process under Board Policy FNG(LOCAL). The individual Defendants' conduct was unreasonable in light of the requirements under Federal

law (Title IX), state law (Tex. Fam. Code and Tex. Admin. Code), and local policy, which all were clearly established law.

87. As the U.S. Supreme Court explained in *Harlow v. Fitzgerald*:

> "[W]e provide no license to lawless conduct. The public interest in deterrence of unlawful conduct and in compensation of victims remains protected by a test that focuses on the objective legal reasonableness of an official's acts. Where an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).

88. All Defendants had a duty to provide and ensure an educational environment for I.L. free of sexual innuendo, intimidation, assault and discriminatory animus and to enforce the regulations, rules, and laws necessary to protect I.L. from the acts of sexual abuse, bias and discrimination.

89. All Defendants intentionally, willfully, and without justification did deprive I.L. on grounds of her gender of her rights, privileges, and immunities secured her by the U.S. Constitution and the laws of the United States, including but not limited to, her rights to equal protection of law as provided by the Fourteenth Amendment of the U.S. Constitution and her right to privacy as protected by the Fourth, Fifth, Ninth and Fourteenth Amendments of the U.S. Constitution, in violation of 42 U.S.C. § 1983.

WHEREFORE, Plaintiffs pray for relief as hereafter set forth.

## PRAYER

90. As a direct, proximate, and foreseeable result of Defendants' deliberate indifference to the sexual assault and harassment against I.L., Plaintiffs and their daughter I.L. have suffered past and future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of dignity, emotional distress, and other nonpecuniary losses and intangible injuries.

WHEREFORE, Plaintiffs pray for judgment against all Defendants and each of them as follows:

## DAMAGES

91. In *Davis v. Monroe County Board of Education,* the U.S. Supreme Court held that a plaintiff may prevail in Title IX damages action against a school district in cases of student-on-student harassment where the funding recipient is (a) deliberately indifferent to sexual harassment of which the recipient has actual knowledge, and (b) the harassment is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school. *Davis v. Monroe Co. Bd. of Educ.*, 526 U.S. 629, 1669-76 (1999).

92. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered and claim the following damages: for special damages for medical services and treatment and future educational expenses and tuition in an amount to be proven at trial;

93. For actual, compensatory, exemplary, and general damages in an amount to be proven at trial;

94. For costs of suit, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

95. For general damages in the sum according to proof; and

96. For such other and further relief as the Court may deem proper, just, equitable and applicable under statutory and common law, including but not limited to injunctive relief to prevent further and other conduct as alleged.

## JURY DEMAND

97. Plaintiffs, Hector Ayala and Itza Ayala, assert their rights under the Seventh Amendment to the U.S. Constitution and demand, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

Dated: December 27, 2016

Respectfully submitted,

By: s/Susan H. Soto
Susan Herbst Soto
SBN: 24076707
FIN: 1812015
The Law Office of Susan H. Soto
6300 West Loop South, Ste. 405
Bellaire, Texas 77401
E-mail: SusanSotoJD@Gmail.com
Tel.: 832-831-9936
Fax: 877-231-7331

ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

As Plaintiffs' counsel, I hereby certify that on December 27, 2016, a copy of Plaintiffs' Second Amended Complaint was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for Defendants in this matter:

Christopher B. Gilbert
Thompson & Horton LLP
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027

By: s/Susan H. Soto