## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| **HECTOR AYALA AND ITZA AYALA AS REPRESENTATIVES AND NEXT FRIENDS OF I.L., A MINOR,** *Plaintiffs*, | § § § § § § § | **CIVIL ACTION NO. 4:16-cv-02503** |
| **v.** | § § | |
| **THE HOUSTON INDEPENDENT SCHOOL DISTRICT; HARRISON PETERS, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; JUSTIN FUENTES, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY; ROBERT SCOTT ALLEN, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY,** *Defendants*. | § § § § § § § § § § § § § | **TRIAL BY JURY DEMANDED** |

## PLAINTIFF'S MEMORANDUM IN RESPONSE
## TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiff asks the Court to deny Defendants' Motion for Summary Judgment.

### A. INTRODUCTION

1. Plaintiff is I.L.; Defendants are the Houston Independent School District, Harrison Peters, Justin Fuentes, and Robert Scott Allen.

2. On August 15, 2015, Plaintiff sued Defendants for violation of Title IX and Section 1983. Dkt. No. 1.

3. On March 2, 2017, Defendants Houston Independent School District ("HISD"), Justin Fuentes ("Fuentes") and Robert Scott Allen ("Allen") filed their Original Answer, asserted five defenses, and reserved the right to assert additional defenses in the future. Dkt. No. 36. On June 9, 2017, Defendant Harrison Peters ("Peters") filed his Original Answer, asserted three defenses, and reserved the right to assert additional defenses in the future. Dkt. No. 44.

4. On December 21, 2017, Defendants filed a Motion for Summary Judgment on Plaintiff's Title IX and Section 1983 claims. Dkt. No. 48.

5. Summary judgment is improper in this case because there are genuine disputes of material fact on elements of Plaintiff's claims.

### B. FACTS INCLUDED IN DEFENDANTS' MOTION AND ADDITIONAL RELEVANT FACTS

6. Defendant Allen argues that he "asked" the HISD Police Department if he "needed to call CPS, and the officers told" him that he "did not." Dkt. No. 48, p. 3. Texas Family Code Section 261.101 enumerates certain persons that are required to report abuse or neglect of a child. Professionals, who are defined in the statute as persons who are licensed or certified by the state and who have direct contact with children, are required to make a report within 48 hours of suspicion that a child has been a victim of sexual contact. Tex. Fam. Code § 261.101(b). The statute sets forth: "A professional may not delegate to or rely on another person to make the report." *Id.*

7. Defendants admit that "[a]n incident form was completed and submitted to the High School Office." Dkt. No. 48, p. 3. Neither Defendant Fuentes nor Defendant Peters has provided evidence that shows what happened to or what action was taken by High Schools Office staff on the incident report form.

a) I.L.'s mother, Itza Ayala, testified during her deposition on November 30, 2017 regarding her experience in dealing Mr. Fuentes' lack of action: "As a chief or as a principal or as – you have to know the things that are going on…If something happens in my house and I'm the head of the house, I should know and take care of this stuff." Ex. A, p. 55-56. Mr. Ayala, I.L.'s father, testified during his deposition on November 30, 2017 regarding Mr. Fuentes: "he knew all about this…Dropped the ball." Ex. B, p. 28, l. 12-13.

b) Mrs. Ayala also testified regarding her experience with Mr. Peters' lack of action: "All the chiefs – there's a chain. And like I said, if you're the head of a house, you should know what's going on and take care of things…I believe they all didn't do – it's not what they did; it's what they didn't do." Ex. A, p. 61-62.

8. Defendants argue that a "decision was made to wait and see what the HISD police officers uncovered as part of their investigation." *Id.* The "Dear Colleague" letter issued by the United States Department of Education on April 4, 2011 and included in Defendants' exhibits to their Motion for Summary Judgment as Exhibit D-1, states: "a criminal investigation into allegations of sexual violence does not relieve the school of its duty under Title IX to resolve complaints promptly and equitably." Dkt. No. 48-4, Ex. D-1, p. HISD 00334.

The letter goes on: "[s]chools should not wait for the conclusion of a criminal investigation or criminal proceeding to begin their own Title IX investigation." *Id.*

9. Defendants argue for the first time that they and other HISD staff were "uncertain whether the sexual encounter that occurred between I.L. and S.S. was consensual or not." Dkt. No. 48, p. 3.

a) I.L.'s initial written statement on August 15, 2015, previously disclosed to Defendants and incorporated herein as Exhibit C, characterizes S.S.'s assault as "something bad," and states that "I told him to stop and no but he wouldn't."

b) School counselor Travis Springfield, whose Declaration and related Exhibits are included in Defendants' Motion for Summary Judgment as Exhibit C, reported in a statement "for the OCR investigation in March 2015" that I.L. "said a boy was touching her and wouldn't stop and that she didn't want it." Dkt. No. 48-3, Ex. C-2, p. HISD 00321.

10. Defendant Allen says he "reviewed the security video of the hallways outside Room 205" and "[o]ne camera appeared to show S.S. and I.L. walking together after the incident, and I.L. did not appear to be upset." Dkt. No. 48, p. 4. There is no evidence in the record that proves that the video, provided to Plaintiff after the discovery period ended (see Exhibit D to this pleading), is from after the assault.

a) Plaintiff will testify that the video provided by Defendants shows Plaintiff and S.S. before the incident, while they were looking for the amplifier.

b) Plaintiff testified during her deposition on November 30, 2017 that she was, indeed, upset after the assault: "…I ran out. And from there I just started

crying on the staircase…"[1], "I just remember her [I.L.'s mother] hugging me on the couch, and I think I – I don't know. I was like spaced out;"[2].

c) Plaintiff's mother, Itza Ayala, testified during her deposition on November 30, 2017 that when Mrs. Ayala arrived at the school office after the assault, "I.L. was crying." Ex. A, p. 18, l. 4.

d) Plaintiff's father, Hector Ayala, testified during his deposition on November 30, 2017 that he remembers that I.L. "didn't want anything to do with him [S.S.]…" Ex. B, p. 7, l. 21-23.

11. Defendants argue that they "did not want to rush to judgment about S.S., so they decided to wait for the HISD police officers to finish their investigation before deciding on any appropriate discipline [for S.S.]." Dkt. No. 48, p. 4. The United States Department of Education's "Dear Colleague" letter issued on April 4, 2011 and included in Defendants' exhibits to their Motion for Summary Judgment as Exhibit D-1, states:   "a criminal investigation into allegations of sexual violence does not relieve the school of its duty under Title IX to resolve complaints promptly and equitably." Dkt. No. 48-4, Ex. D-1, p. HISD 00334.

12. Defendants also argue that in Assistant Principal Trout's opinion, when I.L.'s parents met with him in December 2015, "the parents' intent in having the meeting was to let him know that Houston ISD was *going to be sued* [emphasis added]." Dkt. No. 48, p. 6.

a) Trout's statement to Defendant Allen on March 10, 2015, previously

---

[1] Ex. E, p. 16, l. 21-23.
[2] Ex. E, p. 27, l. 23-24.

disclosed to Defendants and incorporated herein as Exhibit F, states: "Their intent of the meeting was to let me know that Houston ISD was going to be sued."

b) However, Defendant Allen's statement to the OCR, included in Defendants' Motion for Summary Judgment as Exhibit A-1, states: "[o]n December 15, 2015 [redacted]'s parents met with Mr. Trout. They told him *they had filed a suit* against the school and wanted [redacted] removed from campus permanently [emphasis added]." Dkt. No. 48-1, Ex. A-1, p. HISD 00315.[3]

c) Plaintiff's mother, Itza Ayala, testified during her deposition on November 30, 2017 that she did not tell Mr. Trout that she was considering filing a lawsuit against the school district, but that she considered "filing a complaint" with the "civil rights office." Ex. A, p. 38-39.

d) When deposed by Defendants' counsel on November 30, 2017 and asked if either Mr. Ayala or his wife told "Mr. Trout…that you were going to sue the school district," Mr. Ayala responded "No." When counsel asked Mr. Ayala if either he or his wife told Mr. Trout "that you were going to file a complaint against the school district," Mr. Ayala responded "Yes." Ex. B, p. 18, l. 22-p. 19, l. 4.

13. Defendants admit that Defendant Fuentes, "the Director of High Schools in HISD's High Schools Office, talked to Mrs. Ayala on Friday, February 20, 2015." Dkt. No. 48, p. 7. The sexual assault forming the basis for this lawsuit occurred on August 15, 2014. Dkt. No. 41. The assault was reported to the High Schools Office on August 15, 2014. Dkt. No. 48-2, Ex. B-1, p. HISD 00319. The window of time between the assault and any communication or response from the High Schools office is approximately six months. Mr. Ayala testified that Defendant Fuentes "knew all about this" and "dropped the ball." Ex. B, p.

---

[3] It is Plaintiff's position that these contradictory statements indicate that there is a fact issue for the jury to decide. It is relevant to notice of the gravity of the incident and ensuing traumatic situation that Plaintiff and her

28, l. 12-13.

14. Assistant Principal Alonso-Rodriguez states that "[a]t no time did either I.L. or her parents ever complain to me that S.S. was continuing to make her feel uncomfortable, or that he tried to initiate communications with her at all." Dkt. No. 48-2, Ex. B, p. 2, para. 6.

   a) Mrs. Ayala testified during her deposition on November 30, 2017 that she spoke with Ms. Alonso-Rodriguez and "explained to her that she [I.L.] wasn't feeling comfortable [at school]. Ex. A, p. 33, l. 10-11.

   b) Mr. Ayala, I.L.'s father, testified during his deposition on November 30, 2017 that he recalls speaking to Ms. Alonso-Rodriguez about I.L. Ex. B, p. 15, l. 18.

15. School Counselor Springfield states that "[o]nly once in the fall semester did I.L. come to me upset because she had seen S.S. in the hallways…" Dkt. No. 48-3, Ex. C, p. 2, para. 7. He also states: "…I never received any emails or phone calls from either parent regarding I.L.'s comfort level on campus…" *Id.*

   a) I.L. testified during her deposition on November 30, 2017 that she went to talk to Mr. Springfield "whenever she would feel bad" about feeling "anxiety and pressure" after the sexual assault. Ex. E, p. 34-37. She continued, "there's a few conversations where I just – I felt trapped and I needed to escape…and every time I would just be sent back and told I had to deal with my emotions the way everyone else did." Ex. E, p. 38, l. 7-11.

   b) Mrs. Ayala testified during her deposition on November 30, 2017 that she specifically recalls speaking with Mr. Springfield after the assault. Ex. A, p. 25. She told him how I.L. was doing and how she was behaving and asked what was going on with the case. *Id.*, p. 26.

   c) Mr. Ayala, I.L.'s father, testified during his deposition on November 30,

---

family repeatedly provided to Defendants.

2017 that he recalls speaking to Mr. Springfield about I.L. Ex. B, p. 15, l. 16.

## C. ARGUMENT

16. Although summary judgment is proper in a case in which there is no genuine dispute of material fact, this is not a case in which the Court should grant summary judgment. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 293 (5th Cir. 2000).

17. A defendant moving for summary judgment on a plaintiff's claim must demonstrate the absence of a genuine dispute of material fact by either (1) submitting summary-judgment evidence that negates the existence of a material element of the plaintiff's claim or (2) showing there is no evidence to support an essential element of the plaintiff's claim. *J. Geils Band Emp. Benefit Plan v. Smith Barney Shearson, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); *see Celotex Corp.*, 477 U.S. at 322-23. Defendants must demonstrate the absence of a genuine factual dispute. *See Celotex Corp.*, 477 U.S. at 324-25. Only if a defendant meets his burden is a plaintiff required to respond by summary-judgment proof to show a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(e)(3).

18. The burden on the respondent to a motion for summary judgment is to show there is a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at

324; *Doe v. Beaumont Indep. Sch. Dist.*, 240 F.3d 462, 473 (5th Cir. 2001) (reversing summary judgment and stating that "[a] trial must sort out these assertions of fact"); *Prejean v. Foster*, 227 F.3d 504, 514 (5th Cir. 2000) (reversing grant of summary judgment where fact issue remained regarding voting district configurations).

Furthermore, if conflicting inferences may be drawn from two statements made by the same party, then a fact issue is presented. *See, e.g., Randall v. Dallas Power & Light Co.*, 752 S.W.2d 4, 5 (Tex. 1988) (per curiam) (examining the question of conflicting affidavit and deposition testimony).

Here, Defendants have neither negated the existence of a material element of Plaintiff's claims, nor have they shown that there is no evidence to support Plaintiff's claims. Rather, they have created genuine disputes of material fact as enumerated, *supra*.

19. In determining whether there is a genuine dispute of material fact that prevents summary judgment, a court must consider all evidence in the light most favorable to plaintiff as the nonmovant. *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1236-37 (10th Cir. 2002). A court must also resolve all reasonable doubts about the facts in favor of a plaintiff as the nonmovant. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 455-56 (5th Cir. 2005).

20. School districts may be liable where the school district is "deliberately

indifferent to known acts of student-on-student sexual harassment" and where the school district "exercises substantial control over both the harasser and the context in which the known harassment occurs. *Davis v. Monroe County Bd. of Ed.*, 526 U.S. 629, 645-47 (1999). In the case at bar, there is a genuine issue of material fact regarding deliberate indifference; Defendants say they acted adequately and appropriately, Plaintiff maintains that the school staff did not react adequately and that the High Schools Office did nothing.

21. Plaintiff must prove the harassment to which she was subjected was "severe, pervasive, and objectively offensive." *Id.* at 631. Because there is a genuine dispute of material fact on the characterization of the harassment from S.S. and its effect on Plaintiff I.L., as enumerated *supra*, Defendants are not entitled to summary judgment in this case. Plaintiff testified during her deposition on November 30, 2017 that she felt harassed and intimidated by her assailant, S.S., during the fall semester after the assault. Ex. E, p. 43, l. 5-7. She said that S.S. made her "…feel like kind of extremely uncomfortable and kind of like he was trying to make me squirm." *Id.* at l. 14-15.

a) Plaintiff's mother, Itza Ayala, testified during her deposition on November 30, 2017 that she discussed with I.L. that I.L. felt that S.S. would "look at her, stare at her, smile…smirk" and that he would approach the group of friends that I.L. was with – that he "wouldn't avoid seeing her or passing by her." Ex. A, p. 29-30.

b) Mrs. Ayala also testified that she told Assistant Principal Trout that "I.L. was feeling uncomfortable because he [S.S.] was around…and that he will get

too close to her for her – to feel unsafe and uncomfortable." *Id.*, p. 37-38.

    c) Hector Ayala, Plaintiff's father, testified during his deposition on November 30, 2017 that "[i]t was a hostile atmosphere" for I.L. at the school after the sexual assault. Ex. B, p. 16.

22. Plaintiff must also prove that she was denied educational opportunities and benefits – that the harassment undermined and detracted from her educational experience. Defendants are not entitled to summary judgment in this case because as Plaintiff testified during her deposition on November 30, 2017, she felt she needed to leave the specialized fine arts high school where the sexual assault took place because she "…didn't want to have to keep dealing with the anxiety" (of remaining on the campus where the assault took place). Ex. E, p. 53, l. 18-19.

    a) Plaintiff's mother, Itza Ayala, testified during her deposition on November 30, 2017 that I.L. "…wanted to go to a high school where she could expand her art knowledge, and she liked to draw and to paint. And we knew that HSPVA was the high school of choice for students that wanted to have a better…experience with art." Ex. A, p. 10, l. 5-9.

    b) Mrs. Ayala also testified that "[w]e asked I.L. one day that she came crying from school. I remember that my husband was there. And we ask I.L. And she said, "Why do I have to transfer if I didn't do anything wrong" This is the high school that I want" – "I dreamed of going…" *Id.*, p. 40.

    c) Mrs. Ayala continued her deposition testimony: "But after the sexual assault and the – at HSPVA, I.L. wasn't – I guess you could say happy to be at any school. I didn't see what I used to see in her previously." *Id.*, p. 54.

    d) During his deposition on November 30, 2017, Mr. Ayala testified about I.L. having to leave the high school where the assault occurred: "why do we have to move our child from that school? This is a school she always wanted to get into. She loved that school, you know." Ex. B, p. 22, l. 20-23.

## D. SUMMARY JUDGMENT EVIDENCE

23. In support of her response, Plaintiff includes the following evidence:

   a.   <u>Deposition excerpts.</u> The depositions of Plaintiff I.L., Itza Ayala, and Hector Ayala support Plaintiff's factual assertions and establish the existence of genuine disputes of material facts in this matter.

   b.   <u>Documents.</u> The documents, which are verified as authentic, establish the following facts: Document as Exhibit C establishes that the sexual assault was not consensual. Document as Exhibit D establishes that the security video was provided to Plaintiff after the discovery deadline. Plaintiff objects to this and will move for the video's exclusion from trial. Document as Exhibit F establishes that Defendants have incorrectly stated facts surrounding the notice Plaintiff's family gave regarding the facts giving rise to this lawsuit and Defendants' sworn declarations contradict the statement made by the only school staff member present at the meeting with Plaintiff's parents.

## E. CONCLUSION

24. Defendants have highlighted a variety of genuine issues of material fact in this case, which must be heard by the trier of fact. Their Motion does not meet their burden for the Court to grant summary judgment. For these reasons, Plaintiff asks the Court to deny Defendants' Motion for Summary Judgment.

Dated: January 4, 2018

Respectfully submitted,

By: s/Susan H. Soto
Susan Herbst Soto
SBN: 24076707
FIN: 1812015
The Law Office of Susan H. Soto
6300 West Loop South, Ste. 405
Bellaire, Texas 77401
E-mail: SusanSotoJD@Gmail.com
Tel.: 832-831-9936
Fax: 877-231-7331

ATTORNEY FOR PLAINTIFF

## CERTIFICATE OF SERVICE

As Plaintiff's counsel, I hereby certify that on January 4, 2018, a copy of Plaintiff's Memorandum in Response to Defendants' Motion for Summary Judgment and a Proposed Order were electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorney in charge for Defendants in this matter:

Christopher B. Gilbert
Thompson & Horton LLP
Phoenix Tower, Suite 2000
3200 Southwest Freeway
Houston, Texas 77027

By: s/Susan H. Soto