IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HECTOR AYALA, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-16-2503 |
| | § | |
| THE HOUSTON INDEPENDENT | § | |
| SCHOOL DISTRICT, *et al.*, | § | |
|     Defendants. | § | |

# MEMORANDUM AND ORDER

This civil rights case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 48] filed by Defendant Houston Independent School District ("HISD") as to the Title IX claim against it, and by Individual Defendants Harrison Peters, Justin Fuentes and Robert Scott Allen as to the equal protection claim against them.[1] Plaintiffs Hector Ayala and Itza Ayala, As Representatives of I.L., a Minor, filed a Response [Doc. # 49], and Defendants filed a Reply [Doc. # 50]. Having considered the full record and the applicable legal authorities, the Court **grants** the Motion.

---

[1] At the time of the incident at issue in this case, Defendant Allen was Principal of the High School of the Performing and Visual Arts, Defendant Peters was HISD's Chief High School Officer, and Defendant Fuentes was the Director of High Schools for HISD.

## I. BACKGROUND

I.L. was a student at the High School of the Performing and Visual Arts ("HSPVA"), an HISD school. I.L. was on the HSPVA campus on the morning of August 15, 2014, for a program for incoming students. I.L., a rising tenth grader at the time, claims that a rising-senior male HSPVA student ("S.S.") asked her to help him look for an amplifier. I.L. claims that S.S. placed his hand inside her pants when the two students were alone in a practice room. S.S. and I.L. were part of the same group of friends at school, and they had been exchanging text messages over the summer, with I.L. initially expressing an interest in becoming S.S.'s girlfriend. I.L. later sent a text message to S.S. stating that she did not want anyone in her life at that time, and S.S. responded "fine."

Later on August 15, 2014, another HSPVA student informed HSPVA school counselor Travis Springfield that I.L. was crying in a restroom. After speaking with I.L., Springfield informed HSPVA Principal Allen and HSPVA Assistant Principal Mercy Alonso-Rodriguez of the incident involving I.L. and S.S. Allen instructed Springfield to obtain a written statement from I.L. After I.L. completed her handwritten statement, Springfield asked I.L. if she and S.S. had any history together. I.L. informed Springfield that the two students had exchanged text messages over the summer, and Springfield reviewed the messages. Springfield telephoned I.L.'s

parents and left a voicemail message for each of them. Both parents arrived at the school, where they spoke with HISD police officers.

Meanwhile, Rodriguez questioned S.S. in Allen's presence until HISD police officers arrived and began questioning S.S. Rodriguez telephoned S.S.'s mother and asked her to come to the school. Rodriguez then spoke with I.L., who was in the nurse's office at the school.

Allen, Rodriguez, and Springfield conferred and exchanged information. The text messages between I.L. and S.S., and a security video of the hallways outside the practice room where the encounter occurred, caused some uncertainty regarding whether the encounter had been consensual. As a result, it was decided to wait for the HISD police officers to complete their investigation before finalizing an appropriate disciplinary response.

Although they were undecided regarding the appropriate discipline, the HSPVA officials believed there had been an encounter between the students and, therefore, wanted to keep I.L and S.S. apart during the investigation. Allen and Rodriguez met with Assistant Principal Larry Trout on Monday, August 18, 2014, and asked him to ensure that S.S. had no contact with I.L. Trout spoke with S.S. that same day and instructed him to have no contact whatsoever with I.L. Trout instructed S.S. that if he saw I.L. in the hallway, he should turn and go in the opposite direction. Trout

instructed S.S. that he was not to be alone at any time with I.L. and that if he was in a room and I.L. entered, he was to leave the room immediately. Trout also explained these instructions to S.S.'s mother.

Throughout the first semester of the 2014-15 school year, Trout would seek out S.S. at lunch, in the hallway, or after school to verify that he was following HSPVA's rule that S.S. avoid all contact with I.L. Trout also met with S.S. approximately once per month to question him about any contact with I.L. Trout did not observe or hear about any contact between the two students.

Also during the fall semester, Rodriguez informed I.L. that she was available any time I.L. wanted or needed to talk. Whenever Rodriguez saw I.L. in the school hallway, she would ask I.L. how she was doing and I.L. always responded that she was fine.

Springfield worked with I.L.'s parents during the fall semester regarding I.L.'s academic and attendance issues. At one point, I.L. informed Springfield that she had seen S.S. in the hallway and found it upsetting. She stated that there had been no contact, only that she had seen him. Springfield told I.L. that she could come to him any time that she felt upset.

I.L. continued to suffer depression, anxiety, and epileptic seizures throughout the 2014-15 school year. On March 2, 2015, I.L.'s request for a transfer was granted, and I.L. began attending classes at Lamar High School.

Plaintiffs filed this lawsuit on August 15, 2016. After Plaintiffs filed multiple amended complaints and the Court ruled on two motions to dismiss, the only remaining claims are a Title IX discrimination claim against HISD and an equal protection claim under 42 U.S.C. § 1983 against the Individual Defendants. Plaintiffs complain that HISD failed to conduct a proper investigation, and that no action was taken by HSPVA or HISD to "eliminate the hostile environment in which I.L. [then] found herself, to prevent its recurrence, or to address its effects." Plaintiffs complain specifically that HSPVA failed to remove S.S. from the school or, at least, to preclude him from eating lunch or changing classes with any other students and failed to provide an escort for I.L. during the school day. Plaintiffs allege HISD violated Title IX of the Education Amendments of 1972, 29 U.S.C. § 1681, *et seq.*, and that the Individual Defendants violated I.L.'s equal protection rights.

After the close of discovery, Defendants filed their Motion for Summary Judgment. The Motion has been fully briefed and is now ripe for decision.

## II. SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to her case and on which she will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012). The moving party, however, "need not negate the elements of the nonmovant's case." *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case."

*Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Conclusory "allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic

argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075. Affidavits cannot preclude summary judgment unless they contain competent and

otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (internal citations and quotations omitted); *Williams v. Valenti*, 432 F. App'x 298, 302 (5th Cir. 2011).

## III. SECTION 1983 CLAIM AGAINST INDIVIDUAL DEFENDANTS

### A. General Legal Principles for § 1983 Claim

Plaintiffs allege that the Individual Defendants violated I.L.'s right to equal protection. "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotations and citation omitted); *Boyd v. Town of Ransom Canyon*, 547 F. Supp. 2d 618, 625 (N.D. Tex. 2008); *Bohannon v. Griffin*, 2016 WL 2647625, *7 (N.D. Tex. June 30, 2016). To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law. *See Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005); *Moreno v. McAllen Indep. Sch. Dist.*, 2016 WL 1258410, *4 (S.D. Tex. Mar. 31, 2016). In order to state a claim under section 1983 against individual defendants in their individual capacities, the plaintiff must allege either their personal involvement in the constitutional violation or that the individual defendants engaged in conduct that is causally connected to the alleged constitutional violations. *See Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999).

B. **Equal Protection Claim**

In order to state a § 1983 claim of discrimination under the Equal Protection Clause, a plaintiff must allege that a governmental official intentionally discriminated against the plaintiff on the basis of the plaintiff's membership in a protected class. *See Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999); *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997) (citing *Washington v. Davis*, 426 U.S. 229, 238-42 (1976); *Vera v. Tue*, 73 F.3d 604, 609 (5th Cir. 1996)); *Pugh v. Byrd*, 574 F. App'x 505, 510 (5th Cir. July 3, 2014). Proof of discriminatory intent or purpose is required to establish an equal protection violation. *See City of Cuyahoga Falls, Ohio v. Buckeye Cmty. Hope Found.*, 538 U.S. 188, 194 (2003); *Village of Arlington*

*Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977); *see also Rodriguez v. CHRISTUS Spohn Health Sys. Corp.*, 874 F. Supp. 2d 635, 652 (S.D. Tex. 2012).

In this case, Plaintiffs base their equal protection claim on their position that the Individual Defendants intentionally failed to investigate I.L.'s sexual assault and failed to protect I.L. adequately while she remained in the same school with S.S. Plaintiffs have presented no evidence, however, that any of the Individual Defendants acted with discriminatory intent or purpose in handling the incident between I.L. and S.S. Indeed, Plaintiffs in their Response do not identify any such evidence and, instead, rely only on their allegations that the response by HISD officials was slow and inadequate. Absent evidence of intent to discriminate against I.L. because of her sex, Plaintiffs' equal protection claim fails and the Individual Defendants are entitled to summary judgment.

## IV. <u>TITLE IX CLAIM AGAINST HISD</u>

For a school district to be liable under Title IX, its response to student-on-student harassment must be "clearly unreasonable in light of the known circumstances." *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 167 (5th Cir. 2011) (quoting *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 648 (1999)). The standard is a high one, and "neither negligence nor mere unreasonableness is enough." *Id*. (citing *Davis*, 526 U.S. at 648). The school district

is "not required to remedy the harassment or accede to a parent's remedial demands." *Id.* at 167-68 (citing *Davis*, 526 U.S. at 648). A court, on a motion for summary judgment, can determine as a matter of law that a response was not "clearly unreasonable." *Id.* at 168 (citing *Davis*, 526 U.S. at 649).

Plaintiffs in their Response assert summarily that HISD is not entitled to summary judgment on their Title IX claim because "Defendants say they acted adequately and appropriately, Plaintiff maintains that the school staff did not react adequately and that the High School Office did nothing." *See* Response, p. 10. This is Plaintiffs' fundamental argument in support of the Title IX claim – that HISD should have conducted a more thorough investigation independent of the HISD police department investigation, and that HISD should have taken more severe action against S.S. Neither these arguments nor Plaintiffs' evidence supports a Title IX claim.

It is undisputed that HISD employees at HSPVA conducted an investigation. They interviewed both parties involved, and they reviewed a surveillance video of the hallway outside the practice room where the incident occurred. Plaintiffs have not identified any witnesses that HISD failed to interview. Plaintiffs have not identified specifically any additional investigation that HISD could have conducted. Instead, Plaintiffs complain that Allen did not report the assault to state law enforcement or to Texas Child Protective Services, as they believe is required under the Texas Family

Code. The Texas Family Code requires a report of child abuse to be made to Child Protective Services or to any "local or state law enforcement agency." *See* TEX. FAMILY CODE § 261.103(a)(1). It is undisputed that officers from HISD's police department instructed Rodriguez that she did not need to report the incident to Texas Child Protective Services. Plaintiffs were dissatisfied that HISD allowed its police department, rather than its HSPVA staff, to conduct the investigation. In a situation where there is some indication that the incident may have been consensual, and where there is the potential for criminal charges if it was an assault, it is not "clearly unreasonable" to rely on the investigative expertise of a law enforcement agency.

Plaintiffs argue also that HISD should have imposed more severe restrictions on S.S., specifically precluding him from eating lunch and changing classes with other students. HSPVA staff implemented significant restrictions on S.S.'s movements, described above, to avoid contact between him and I.L. Indeed, these restrictions were successful in preventing all but isolated encounters between the two students. I.L.'s parents claim that they advised HSPVA staff that I.L. felt uncomfortable, but the cited testimony is extremely vague and establishes only that I.L.'s mother notified HSPVA that I.L. "wasn't feeling comfortable at school" and that her father talked to Rodriguez about some unidentified topic. Plaintiffs identify no statements to HSPVA or other HISD staff that would have placed the school on notice that S.S. was

continuing to harass I.L., if there was in fact ongoing harassment. Indeed, I.L. testified in her deposition that she never told her parents or anyone at the school that she believed S.S. was trying to make her uncomfortable.

HISD, through HSPVA staff and through the HISD police department, conducted an investigation of the incident that was not "clearly unreasonable." Similarly, HISD undertook steps to prevent contact between I.L. and S.S., and those procedures were mostly successful. The evidence, viewed in the light most favorable to Plaintiffs, does not create a genuine issue of material fact regarding the reasonableness of HISD's response to the incident involving I.L. Because the response was not as a matter of law "clearly unreasonable," HISD is entitled to summary judgment on Plaintiffs' Title IX claim.

## V. CONCLUSION AND ORDER

Plaintiffs have failed to present evidence that raises a genuine issue of material fact in support of their assertion that the Individual Defendants acted with discriminatory intent and purpose in the manner in which they handled the incident between I.L. and S.S. As a result, the Individual Defendants are entitled to summary judgment on the § 1983 equal protection claim.

To prevail on their Title IX claim, Plaintiffs are required to prove that HISD's response to the incident between I.L. and S.S. was "clearly unreasonable." The

evidence, viewed in the light most favorable to Plaintiffs, fails to raise a genuine issue of material fact regarding this requirement. Consequently, HISD is entitled to summary judgment on Plaintiffs' Title IX claim. It is, therefore, hereby

**ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 48] is **GRANTED** and Plaintiffs' claims against HISD and the Individual Defendants are **DISMISSED WITH PREJUDICE**.

The Court will issue a separate final judgment.

SIGNED at Houston, Texas, this **22nd** day of **January, 2018.**

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE